Q. I can hear you and see you. And more importantly, can you hear and see the counsel? Would you just say your name, please, so we can make sure. Michael Powell on behalf of Mr. Salman, Your Honor. Can I see counsel? Thank you. You may proceed. Good morning, Your Honors. Today we're talking about basically whether or not the Howard case controls this particular issue factually. What we have here, at least in Council 1 or 2, are two alleged fictitious financial obligations. And the documents submitted by the government both, at least in our estimation, contain a clear disqualifying mark on the face of the side drafts. Those are Exhibits 11 and 13, which are found at EOR Volume 3, Pages 327 to 329. I know from the record that your client went to great lengths to hope that he would find that narrow, I don't want to say window, but portion of how he might create such a document that would not be in violation of the law. Is that correct? Exactly, Your Honor. And I think at least my reading of the transcript, and we all know he defended himself, was that part of his theory of his defense was that he had sent a contemporaneous letter to Robert Rubin and then Secretary Treasurer explaining his theory of how these accounts arose under House Resolution 192 and so on. But those documents apparently were never admitted. But, I mean, he put on testimony as to the underlying theory of that. And the whole point of it was to show that he wasn't trying to defraud anybody. But, I mean, I think the broader question I guess the question is, were these accepted? No, Your Honor. They were rejected at the outset. As far as I know, I mean, they sent to, nobody ever testified to that one way or the other. The IRS got them, they looked at them, nobody knew what they were. But, I mean, that kind of disturbs me in a sense based on what Howick said was that the legislative intent behind this was to protect a particular vulnerable class of victims. Your Honor, I didn't agree with you that you have to be just a regular citizen to be protected, but that the IRS could be within the category of protected people if people were using illegal instruments to try to pay their taxes. Does it boil down to whether putting non-negotiable on the instrument somehow saves him from criminal prosecution? Well, I think it does, Your Honor, because I don't believe that, at least Howick says, the document must purport to be a negotiable instrument. I mean, that's how you get to the end. Yes, Your Honor. Counsel, I have a question for you on that. Of course, Howick was dealing with an instrument purporting to be a negotiable instrument. I don't like it, I don't. But the Secretary acted as Dr. Gorsuch. So the problem I have with Howick's position is, if I just look at the statute at 514A330, page 2, it would seem to cover passing a fictitious instrument that appears to be an actual security. So I don't know why we studied that it can't appear to be an actual security when it says non-negotiable, if SITRAS is not a negotiable instrument. Well, Your Honor, I actually don't know the answer to that because the government put on no evidence at the trial what were the common indicia of SITRAS. I mean, it's not a negotiable instrument. Does it qualify for security? We have no actual evidence in the That's not a contention you're pursuing on appeal, is it? That the evidence is insufficient in that regard? Yes, Your Honor. In fact, one of the things I pointed out is that what the government tried to analogize this particular piece of paper to was a common check. But I pointed out in the brief and in the reply brief that there's no evidence in the record about what a side draft looks like, how it's used, other than the treasurer, the comptroller of the currency, expert the government produced, said that the Treasury Department doesn't use them. That's all we have, but we have nothing. He never described what a side draft looks like, what would be the hallmark of a side draft, what you need to show, well, what you need to put on it to make it appear to be a genuine side draft, whatever that may be. I mean, I had to go look it up. Let's assume you could look at the face of it. I think that's probably true in a sense. But then the question is, it could be in a statute, and your point is whether there's sufficient evidence to say that it is somehow meant to be, in effect, a fictitious document. Right. Your Honor, because what they presented to the jury was what a check would look like. And I don't think it's a fictitious   check. I think it's a non-negotiable check. So what's your argument about what a non-negotiable check looks like? Which is a negotiable instrument. That's what he said, well, we look at this, has a pay line, and in fact, the government argument, well, it looks like a check. That was the whole point of presenting this gentleman as their expert, that we have a pay line, but then he says, well, it doesn't really look quite like a check either because it doesn't have some of the other indicia, it doesn't have a bank on it, it doesn't have a magnetic … Well, it says non-negotiable. Well, but see, Your Honor, that's my problem is that they're trying to mix and match. Their expert told the jury what a check looks like and said this looks kind of similar, but it doesn't. But no one ever testified to the jury what, in fact, a site draft would look like. In other words, what would be the indicia of a site draft as a financial document for which the jury could determine that it was an actual, or it appeared to be an actual document. Well, these documents were submitted, however they might be characterized, as in an effort that they would be accepted, correct? I mean, and that was indicated by the various listing of payments. So wasn't the intent of this under that second question of whether it's to obstruct the IRS, the intent was that they would be – these – no, Your Honor, I think the intent was, as I understand how it was presented, his intent, at least, was to enter a negotiation with Robert Rubin, and if you're looking at that's what a site draft is, it's, you know, okay, let's start a negotiation. Do you owe me this money or not? Negotiation over with the Secretary of the Treasury, here's my site draft to pay my taxes, and now I'd like to negotiate with you over how much I owe? No, how much the government owes me, and their theory, and these people's theory about when we went off the gold standard, the government went bankrupt, everybody in America's a judgment creditor, the government owes them whatever. I mean, it kind of almost makes sense. I want to get back to exactly what your contention that you're raising on appeal is. Your point one says that the government failed to present sufficient evidence, but it all seems to end with, you know, you've got a big long paragraph that the document reported to be a negotiable instrument. All your sufficiency of evidence seems to go to that point and nothing else. Well, Your Honor, because that's what the government proved. I know, but that's all – that's the only point you're raising, is that right? Whether or not it has to be a negotiable instrument? No, Your Honor. Well, I mean – That's all you seem to be arguing. What else are you arguing? I'm arguing that, okay, it may not be a negotiable instrument, but we don't know what the other particular document looks like. You make that argument in your brief, though. Yes, Your Honor. Your whole argument comes down to, you know, there's nothing in here that shows it's a negotiable instrument and that Howard requires that. Well, Your Honor, but I also argued that we don't know what a site draft looks like. All – there's no evidence in the record of what a site draft looks like or what would be indicia of – You don't have any argument that says, you know, the evidence was insufficient because it failed to show, you know – well, say failed to meet what Howard calls a verisimilitude requirement, right? Right. But you don't make that argument. Well, Your Honor, in response to the government's argument that a very – I, you know, I argued that in the reply brief. The documents it issued do not purport to be a class of negotiable instruments, as on the face, and there is no evidence in the record of what attributes might be common to non-negotiable class of financial instruments. In response to the government's arguments, that's on page two of my reply brief, Your Honor. Do you want to save your remaining time for rebuttal? My 42 seconds, yes, ma'am. Good morning. Thank you. May it please the Court, Elizabeth Olsen on behalf of the United States. Before I begin, if I could just apologize for a mistake in the government's brief, actually a repeated mistake. There are several points at which the brief refers to the fictitious obligation statute as 18 U.S.C. 415 rather than 514. Numerical dyslexia on my part. I'm not sure how it happened or how I didn't catch it in the proofreading, but I apologize to the Court. In Howick, this Court articulated the test for when a document qualifies as a fictitious obligation under 18 U.S.C. 514, and it adopted the requirement of verisimilitude, which is the quality of appearing to be real or true. The test isn't whether it looks like any particular financial instrument, but whether Why do you say evidence in this case of verisimilitude? Well, I think that the document He says there isn't any. He says it all, you know, has to do with, you know, your testimony has to do with checks and not with site drafts. No, actually, the government's witness spoke quite a bit about site drafts and specifically about Saying we don't use them? Besides saying we don't use them, on Excerpt of Record 168 in particular, he spoke about the fact that site drafts generally are nonnegotiable. He didn't talk specifically about what a site draft looks like generally. I mean, what it boils down to is we know they're not negotiable. We know that this document said it wasn't negotiable. We know it's not a check. So doesn't it come down to under 514, does it bear a family resemblance to a genuine financial instrument? Exactly. So what was the evidence that if they say, well, we don't use them and these are a piece of junk, what was the evidence that it bears this resemblance? The documents themselves. And if you look at the documents themselves, they're in the Excerpt of Record at 327 and 329. And the question is, the question under Hoek is whether these appear to be an actual or real financial instrument. And what's the evidence on that? Well, in, well What did he say? Well, he talked about Give me a, give me a, you know, page citation. If you look at Excerpt of Record 193, what he said is the way that this draft is styled, Mr. Salmon is telling the IRS that they can send this site draft to the Treasury and that Treasury will honor the draft. Now, he spoke, he did talk about, I mean, here's kind of the odd thing about it. It'd be one thing if I sent the site draft to you or he sent it to me, you know, but he sends it to the very institution which supposedly issued it. So, in other words, it says on here, United States Treasury, 15th and Pennsylvania Avenue, northeast. I think it's actually northwest. It's actually northwest, yeah, from my recollection. And then he says pay at site to the order of the IRS, which is, of course, part of the United States Treasury. Yes. So he sends it to the very institution that supposedly issued it. Yes. And then the government's contention is, but it bears indicia to a real instrument. It bears, if you look at the document and you look at the family of financial obligations, and as this court said in Howick, this is going to be an ad hoc analysis because there's an infinite number of financial obligations and there's an infinite number of fictitious financial obligations. Now, if you look, if you read Howick, Howick contrasted documents that would qualify with documents that wouldn't qualify. And the example that they gave of documents that wouldn't qualify was monopoly money or a bill that has a picture of a dog smoking a cigarette. I mean, those documents. Cigar. Actually, it said cigarette, which I thought was interesting because I usually think of a dog smoking a cigar. But, you know, you look at that and it doesn't appear to be real or true. You look at this document and the jury found that it did appear to be real or true. I mean, it is a fact. I get back to my question. There has to be evidence to support that argument you make to the jury. But what's the evidence that this has, you know, I'll call it verisimilitudinous characteristics. Where's that evidence? All of the evidence is both the checks themselves or the site drafts themselves. What are you saying? It's self-evident? Well, in an ad hoc analysis like this, it somewhat is. I mean, if the test is does this look like something that is in the general family of financial instruments, you look at the document and it either does or it doesn't, right? Well, I think maybe it was in the brief. You argue, okay, it has like a little section that says certified draft number and then you get to fill it in. UCC registration number. Tender at par, HJR, I guess that's 192. House resolution. Yes. So was there testimony that those things made it seem real? Yes. And the government. They were talking about checks when they were talking to those things. He was talking what the government. Checks are negotiable instruments and this says not negotiable. What he was talking about, he went through all of the aspects of these documents, the pay-to, all the ways in which they looked, the ways in which it looked familiar to a financial instrument with which the jury was most likely to be. But isn't it true when he was giving all that testimony he was talking about checks? Yes, he was talking about the similar. He was talking about checks. So my question still is when did he talk about site drafts? He talked about site drafts in the pages around ER-168 and ER-193 when he was talking about. He explained the similarities to a financial instrument with which the jury would be most familiar and then explained how because it was a site draft, clearly it wasn't a check, the differences, and then he explained that site drafts by their nature are non-negotiable, that that doesn't mean that they don't have value. It doesn't mean. No, no, but he doesn't explain at all the very similitudinous characteristics of a site draft, does he? I think. I would say one word about that. Point me one sense where he says something about what a site draft looks like as opposed to a check. He did not talk specifically. He didn't say it. Right, exactly right. But I would say, Your Honor. Where is the evidence to support that element of the crime? I would say, Your Honor, that that misreads or that misunderstands the test of verisimilitude. In Howick, this court rejected the test of similitude. And the test of similitude is whether this document looks like something that actually exists, right? And under a similitude test, you take a counterfeit dollar bill and you say, does it look like a real dollar bill? You would take a counterfeit site draft and say, does it look like a real site draft? That's not what the test for a fictitious obligation is under Howick. It's verisimilitude, which is you look at the document and you say, does this appear to be real? Does this appear to be true? And I think that if you look at the documents on 327 and 329, and this was a question for the jury, and they do appear to be true. They appear to be something that could be legitimate. Now, one thing. So, again, your argument now seems to be, well, it doesn't have to be any testimonial evidence because it's self-evident from the face of the exhibit to be arguing now. No, I think that, well, in a certain sense, although the government witness, Mr. Rausser, did talk about various characteristics of various financial instruments. He talked about characteristics of checks and the qualities that this document shared. He did talk about the characteristic of the site draft in terms of it being not only it being non-negotiable, but also it being the product of a negotiation between two parties and the difference between a check, which you can write to the grocery store, the grocery store can deposit it in their bank, their bank can go to your bank, and, you know. So to whom does it need to have this verisimilitude? To the recipient or to a reasonable objective observer? I believe that's to a reasonable objective observer. What the court said in Hoek is that a document can qualify as a fictitious obligation under 514, even if it is insufficiently convincing to actually defraud the intended victim, right? I mean, even if a person would look at this and say, well, you know, it looks like some kind of financial instrument, but I've never seen it before, and you know what, I'm just not going to take it, I want cash. That does not defeat liability or defeat responsibility under 514. If it was contrived or created to appear to be. Well, Hoek itself was pretty contrived, right? What was it, a $500 million note or something like that? Yes, it was a $500 million bill. Something like that. $100 million bill. I'll take that box of candy and change, right? Exactly. Too many people are going to believe that. Not too many are, but the question was whether it appeared. And that goes to, in Hoek's discussion about how this was necessarily an ad hoc analysis, because the kind of things that they talked about was, well, it's got portraits of government buildings, and it's got a picture of a president, and it's got all these things, and it doesn't say that it's not negotiable. Now, when what you're talking about is currency, all of those features do come in. I thought when we started this case based on the briefing that the appellant's point was that under Hoek something had to be negotiable. I thought that was one of their points. Yeah, I thought that was the primary point, and it seems like they've stepped back from that. So I guess I'm not really sure. I believe that they might be misreading Hoek to say that it has to appear like a site draft, and under the verisimilitude test, it's a broader test than that. Thank you. Forty-two seconds. If we're going to say it's non-negotiable on its face, that's one of the things Howard says, is it free of any disqualifying mark? If you go down, as Judge Toshima said, if you go down and say, here's this piece of paper that says it's not negotiable, give me something for it, I mean, then if that was it, every time Ed McMahon sends out, you've paid the order of $1 million, you've won the publisher's clearinghouse, which clearly on the face says non-negotiable. Now, what is it? My point was to begin with, it doesn't fit the negotiable class of financial instruments. Well, then, if it doesn't fit that, what's the other class, and what are the hallmarks of it? What are the indicia that would lead anybody to believe that this is an actual site draft, whatever that might be, and there's absolutely no evidence in the record of that? Thank you. And that's my time. Thank you, Your Honor. Thank both counsel for your arguments this morning. The case of United States v. Solomon is submitted.
judges: Tashima, McKeown, Gould